UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KELVIN BROWN,

    Defendant (1).

Case No. 21-cr-20236-1

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER [#13]

### I. INTRODUCTION

On April 7, 2021, Defendant Kelvin Brown ("Defendant") was charged in an indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1, PageID.1. On May 4, 2021, a detention hearing was held before Magistrate Judge Kimberly G. Altman. ECF Nos. 7, 8. Magistrate Judge Altman concluded that the Government met its burden of showing that no condition or combination of conditions can reasonably assure the safety of the community. ECF No. 9, PageID.14. Defendant was therefore detained pending trial. *Id.*

Presently before the Court is Defendant's Motion for Revocation of Detention Order, filed on May 18, 2021. ECF No. 13. The Government filed a Response and corresponding exhibits on June 2, 2021. ECF Nos. 17, 18, 21. Defendant filed his

1

Reply on June 10, 2021. ECF No. 22. A hearing on this matter was held on June 22, 2021. For the reasons that follow, the Court will **DENY** Defendant's Motion for Revocation of Detention Order [#13].

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Offense

On November 19, 2020, two Detroit Police Department ("DPD") officers stopped Defendant in the Linwood Street and Whitney Street area of Detroit, Michigan. ECF No. 17, PageID.89. According to the officers' report, Defendant was driving a gray 2004 Chevrolet Tahoe with expired registration tags. ECF No. 18-1, PageID.109. At the time of the stop, there was one other occupant in the Tahoe, who was seated in the front passenger side. ECF No. 17, PageID.89.

Upon making contact with Defendant, one of the officers asked Defendant for his driver's license, registration, and insurance. *Id.* at PageID.89. Defendant only provided his driver's license; he could not provide proof of registration or insurance for the Tahoe. *Id.* The DPD officers asked Defendant if there were any weapons or contraband inside the car. *Id.* Defendant initially replied, "no." ECF No. 21, 1:00, 3:15, 3:17.[1]

---

[1] The Government filed Officer Paris Johnson's body camera video footage from November 19, 2020 as "Exhibit 3" to its Response in the traditional manner. ECF No. 21.

2

While one of the officers spoke with Defendant about missing documents, the other officer observed what appeared to be a firearm wrapped in clothing in the backseat. ECF No. 18-1, PageID.109. When Defendant was asked a second time whether there were any weapons in the vehicle, he answered in the affirmative. ECF No. 21, 3:38. Defendant explained that he had the firearm for protection. *Id.* at 3:45-3:50. Defendant and the front-seat passenger were then asked to exit the vehicle. ECF No. 17, PageID.89. They each complied with this request. *Id.*

During a search of the vehicle, one of the DPD officers located a beige Glock 19, 9mm pistol with an extended magazine in the backseat. *Id.*; ECF No. 18-1, PageID.109. According to the officers' report, the firearm was loaded with twenty-four live rounds. ECF No. 18-1, PageID.109. While outside the vehicle, Defendant reiterated that he had the firearm for safety since he was recently robbed. ECF No. 21, 4:28-4:35. He emphasized that the firearm was not on him and it was instead in the backseat of his vehicle. *Id.* at 5:45-5:550.

Defendant was then arrested for carrying a concealed weapon and placed in the officers' squad car. *Id.* at 5:07-6:43; *see also* ECF No. 18-1. While he was in the squad car, the officers informed Defendant that the registration tags attached to the Tahoe expired on December 19, 2019. ECF No. 21, 23:40-23:45. They also obtained the vehicle identification number for the Tahoe and learned that the

attached license plate was improper. *Id.* at 23:45-24:00. Defendant previously told the officers he just bought the Tahoe. *Id.* at 14:10-14:15.

In February 2021, a federal arrest warrant was issued for Defendant. Prior to his arrest, Defendant was indicted on one count for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Defendant surrendered for his arrest subsequent to the indictment, and he appeared before Magistrate Judge Altman for his initial appearance on May 3, 2020. ECF No. 3. Defendant was ordered detained pending trial following his detention hearing the following day. ECF Nos. 7, 8, 9.

**B. Defendant's Background**

Defendant is thirty-six years old. He is a lifelong resident of Detroit, Michigan, excluding a period of time when he attended a local college in Grand Rapids, Michigan after high school. Defendant has strong family ties to the area, including his sister, who also resides in Detroit, his girlfriend, and his five children from previous relationships. Defendant informed Pretrial Services that he resided with his stepfather for approximately twelve years. According to his girlfriend, however, Defendant has been living with her and her son for the past six months at her home in Detroit.

Defendant explains that he has been self-employed as a landscaper in Detroit since March 2020. He purportedly started his own landscaping business due to the

4

COVID-19 pandemic. His girlfriend confirmed this information. Prior to this employment, Defendant claims he was employed for two and a half years as a factory line worker at Yapp, an auto parts maker, in Romulus, Michigan. Defendant did not report any other employment history. Pretrial Services was unable to verify this information at the time of its report.

Defendant's girlfriend confirmed that Defendant is in excellent physical health with no medical issues reported. She also confirmed that Defendant is presently in good mental health. Defendant informed Pretrial Services that he was previously evaluated due to having difficulties coping with his brother's death. He did not identify any diagnosis. Pretrial Services was unable to verity this information at the time of its report. Defendant also explained that he began using marijuana at age nineteen and he continues to use this substance for pain.

Defendant has a history of several arrests and convictions, beginning at the age of twenty-one. Many of his prior convictions are misdemeanor convictions. In 2006, however, Defendant was convicted of felony larceny. In 2013, Defendant was convicted of felony assault with a dangerous weapon. Defendant was sentenced to three years' probation in June 2013. According to Pretrial Services' report, Defendant violated this probation in February 2014.

Defendant was most recently convicted of fourth-degree child abuse in June 2019. He was sentenced to sixteen days in custody and two years' probation. On

November 20, 2020, a Michigan Department of Corrections ("MDOC") Probation Violation Warrant Addendum was filed, which cited multiple violations. The instant offense was included in the Addendum.

### C. Detention Hearing

Prior to his detention hearing, Pretrial Services recommended that Defendant be detained pending trial. At the detention hearing, Magistrate Judge Altman emphasized Defendant's criminal history, which includes a "pattern of violence particularly against women and children." ECF No. 11, PageID.49–50. Magistrate Judge Altman also emphasized the circumstances surrounding the instant offense, including Defendant's various probation violations. *Id.* at PageID.50. She also noted Defendant's history of noncompliance while on supervision. *Id.* Magistrate Judge Altman concluded that no condition or combination of conditions can reasonably assure the safety of the community. *Id.* at PageID.51. Magistrate Judge Altman issued an Order of Detention Pending Trial at the conclusion of the hearing. ECF No. 9.

### III. LAW & ANALYSIS

### A. Legal Standards

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. It is a *de novo* hearing. *United States v. Jones*, 804 F. Supp. 1081 (S.D. Ind. 1992); *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "The default position

of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Pre-trial detention shall be ordered only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In determining whether there are conditions which will reasonably assure the appearance of the person and the safety of the community, the district court must make findings based on the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

With respect to Defendant's present Motion, in which he argues he can present new evidence to mitigate the Court's safety concerns, a detention hearing may be reopened if (1) new "information exists that was not known to the movant at the time of the hearing;" and (2) the new information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the

7

appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B); *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). As to the second prong, the new information must be "sufficiently material to the issues of dangerousness," *United States v. Sandles*, 9 F. App'x 377, 379 (6th Cir. 2001), such as "truly changed circumstances, something unexpected, or a significant event," *United States v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009), *aff'd*, 511 F. App'x 391 (6th Cir. 2013).

**B. The Parties' Arguments**

In his present Motion, Defendant moves this Court for revocation of his detention order. ECF No. 13. He argues that he poses neither a danger to the community nor a risk of flight. Defendant emphasizes that conditions can be imposed to assure the Court of his appearance at future court proceedings and the safety of the community, including a third-party custodian, William Clarence Wilson, Jr. *Id.* at PageID.66. According to Defendant, his ability to propose Wilson as his third-party custodian constitutes new information pursuant to 18 U.S.C. § 3142(f)(2)(B).[2] *Id.* Moreover, Defendant challenges Magistrate Judge Altman's

---

[2] The Court denotes that this Defendant's first Motion for Revocation of Detention Order.

emphasis on his criminal history, arguing that she improperly relied on his charged offenses rather than his convictions. *Id.* at PageID.70.

The Government first argues that Defendant fails to present any new information in support of the present Motion. ECF No. 17, PageID.88. The Government asserts that "[t]he ability to propose this third-party custodian was not unknown to the defendant at the time of his initial hearing." *Id.* Moreover, even if Defendant's proposed third-party custodian was a sufficient basis to seek review of the detention order, the Government contends that each of the factors under 18 U.S.C. § 3142(g) support continued detention. *Id.* According to the Government, no condition or combination of conditions, including Defendant's proposed third-party custodian, can reasonably assure the safety of the community. *Id.*

### C. Analysis

#### 1. New Information Under 18 U.S.C. § 3142(f)(2)(B)

As an initial matter, the Court notes that Defendant's proposed third-party custodian, Wilson, was not discussed at the initial detention hearing before Magistrate Judge Altman. ECF No. 11. While such a condition could have been suggested at the time, especially in light of Defendant's report to Pretrial Services that he has lived at Wilson's home for the past twelve years, the Court finds that this information can be reasonably considered "new" for the purposes of 18 U.S.C. § 3142(f)(2)(B). However, this new information is not sufficiently material to the

9

issue of dangerousness. The Court finds that Defendant's proposed third-party custodian does not alter the Court's conclusion, as set forth below, that no condition or combination of conditions would assure the safety of the community.

2. **Factors under 18 U.S.C. § 3142(g)**

Magistrate Judge Altman determined at the detention hearing that the factors under 18 U.S.C. § 3142(g) support detention. ECF No. 9. In the Order of Detention Pending Trial, Magistrate Judge Altman emphasized Defendant's prior criminal convictions, including those demonstrating a violent and assaultive history while on supervision. ECF No. 9, PageID.14. While the Court finds that Magistrate Judge Altman ultimately reached the right decision, the Court would not place as much emphasis on Defendant's criminal history. As set forth below, upon careful consideration of the four factors under § 3142(g), including consideration of Defendant's proposed third-party custodian, the Court finds that no condition, or combination of conditions of release, will reasonably assure the safety of other persons and the community.

i. **Nature and Characteristics of the Charged Offense**

The first factor the Court must consider is the nature and circumstances of the offense charged against Defendant. The Government argues that the nature and circumstances of the offense charged in this case are serious, as they involve a firearm, which was within Defendant's reach and loaded with twenty-four rounds of

ammunition. ECF No. 17, PageID.92. Further, the Government emphasizes that Defendant has had a prior conviction for felony assault with a dangerous weapon and was on probation for fourth-degree child abuse at the time of the instant offense. *Id.* at PageID.91–92.

The full extent of the nature and circumstances of the charged offense is serious. First, Congress has specified that an offense which involves a firearm, as is the case here, is a categorically serious offense. *See* 18 U.S.C. § 3142(g)(1). Moreover, the Sixth Circuit has recognized that a felon in possession of a firearm charge is a serious offense. *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002). Further, the Court emphasizes that the specific circumstances surrounding the instant offense involve a firearm which contained an extended magazine and several rounds of ammunition. The Court takes notice of Defendant's assertion that the firearm in question was not his, but rather his stepfather's. ECF No. 13, PageID.69. In its Response, the Government emphasizes that Defendant told the DPD officers during the traffic stop that he had the firearm for "protection" after he claimed he was the victim of a recent robbery. ECF No. 17, PageID.92. At this juncture, the Court finds that the presence of the loaded firearm with an extended magazine, regardless of whether it was Defendant's or his stepfather's, demonstrates the seriousness of the specific circumstances surrounding the present offense.

Second, the Court takes seriously Defendant's probation status at the time of the instant offense. As noted above, Defendant was on probation for fourth-degree child abuse. Pretrial Services indicated in its report that a violation addendum was submitted to the state court on November 20, 2020, which cited violations of alleged threatening behavior involving a firearm on July 1, 2020, an alleged sexual assault on September 20, 2020, and the instant offense.

Accordingly, this first factor thus weighs in favor of Defendant's detention.

### ii. The Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Defendant. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010); *see also United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). For this second factor, the Government emphasizes Defendant's prior convictions and numerous violations of probation, including two felony convictions and a recent fourth-degree child abuse conviction. ECF No. 17, PageID.93–94.

Upon review of the parties' briefs and Pretrial Services' report, the Court finds that the weight of the evidence of Defendant's dangerousness is strong. As noted above, the Court does not place as much emphasis on Defendant's prior convictions, which include many misdemeanor offenses. As to Defendant's two felony convictions, one occurred fifteen years ago and resulted in a two-day custodial

sentence. The Court is more concerned with Defendant's second felony conviction in 2013, which involved a dangerous weapon. More importantly, however, the Court is troubled with Defendant's repeated probation violations. Pretrial Services denotes several warrants which were issued for various probation violations. Upon review of the November 20, 2020 MDOC Probation Violation Warrant Addendum, which the Government filed under seal, Defendant violated his most recent two-year probation term by allegedly committing the following conduct, in addition to the instant offense: (1) threatening the mother of his child with a handgun which contained an extended magazine on July 1, 2020; and (2) sexually assaulting a separate victim on September 20, 2020. ECF No. 18-6. Additionally, the Court takes notice of Defendant's several other reported probation violations in the Pretrial Services' report. The Court ultimately finds that Defendant's repeated behavior of violating court orders is of great concern for Defendant's future conduct to follow directives from Pretrial Services should he be released pending trial. This behavior, combined with Defendant's criminal convictions, suggests the weight of Defendant's dangerousness.

In his Motion, Defendant argues that his proposed third-party custodian, Wilson, warrants a revocation of the detention order at this time. ECF No. 13, PageID.72. According to his affidavit, Wilson is Defendant's stepfather who previously served in the U.S. Army and also worked for the U.S. Postal Service.

13

ECF No. 13-1, PageID.75. Wilson affirms that he fully understands and appreciates the duties and responsibilities of serving as a third-party custodian. *Id.* Upon careful consideration, however, the Court finds that this condition does not completely ease the Court's concern of Defendant's dangerousness. The Court notes that Defendant reported to Pretrial Services that he has resided with Wilson for the past twelve years.[3] Accordingly, the Court highlights that Defendant was living with Wilson at the time of committing several of the aforementioned probation violations. The Court thus questions how effective such a third-party custodian placement can be in ensuring that Defendant complies with directives from Pretrial Services.

Moreover, the Court notes inconsistencies between Wilson's affidavit (ECF No. 13-1) and the Bureau of Alcohol, Tobacco, Firearms and Explosives' Report of Investigation ("ATF Report") (ECF No. 18-2). For example, Wilson asserts that he is the owner of the Tahoe, while the ATF Report indicates that Defendant is the registered owner. Additionally, while Wilson claims he is the registered owner of the firearm recovered from the Tahoe, the Glock 19, the ATF Report provides that Wilson only has one pistol registered to him, a Springfield (HS Produkt), Model XDM Elite. These inconsistencies further caution the Court against finding that Wilson can serve as an effective third-party custodian.

---

[3] In his Reply, Defendant asserts that he was not living with Wilson at the time of his arrest. ECF No. 22, PageID.161.

In sum, the second factor also weighs in favor of Defendant's detention.

### iii. History and Characteristics of the Defendant

The third factor requires that the Court review the history and characteristics of the Defendant, which are statutorily separated into two categories. The first category examines the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category asks "whether, at the time of the current offense or arrest, [Defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Here, Defendant is a lifelong resident of the community with familial ties to Detroit. ECF No. 13, PageID.67. Specifically, his girlfriend, sister, father, stepfather, and five children live in the area. The Court positively takes notice of his familial ties, as well as his commitment to remaining in contact with his five children. The Court takes issue, however, with Defendant's uncertain employment history. While Defendant claims that he has been self-employed as a landscaper in Detroit since March 2020, Pretrial Services was unable to verify this information.

As noted above, Defendant does not report any diagnosis or medications for any mental health concerns. He informed Pretrial Services that he began using marijuana when he was nineteen and that he needs to renew his medical marijuana card. Defendant also reported, and his girlfriend confirmed, that he was in excellent physical health.

The Government directs the Court to Defendant's prior convictions and numerous probation violations to "underscore his dangerousness, pattern of undeterred criminal activity, and deep lack of respect for the law." ECF No. 17, PageID.93. The Government highlights that Defendant's first felony conviction was in 2006 and that his criminal activity has "continued to escalate." *Id.* at PageID.93–94. Specifically, the Government emphasizes that in 2013, Defendant was convicted of felony assault with a dangerous weapon. *Id.* at PageID.94. The Government details the circumstances surrounding this conviction, which ulitmatley resulted in a sentence of three years' probation.

As indicated above, while the Court takes seriously Defendant's criminal record, especially his conviction for felony assault with a dangerous weapon, it is more concerned with Defendants' repeated probation violations. Pretrial Services indicates numerous probation violations between 2014 and the present offense. Indeed, in its assessment of Defendant's danger, Pretrial Services highlighted Defendant's "poor response to state probation orders." The Court ulitmatley

concludes that Defendant's history of repeated probation violations, some of which include a handgun, does not ease the Court's concern for Defendant's dangerousness.

Based on the foregoing considerations, the Court agrees that this third factor also weighs in favor of detention.

### iv. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). The Court must "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Here, for all the reasons set forth above, the Court finds that Defendant would pose a danger to the community if released pending trial. Furthermore, the Court weighs strongly the recommendation from Pretrial Services, which concluded that there was no condition or combination of conditions that could reasonably assure the safety of the community. This final factor thus also weighs in favor of detention.

Moreover, the Court agrees with the Government's concern for Defendant's proposed third-party custodian. *See* ECF No. 17, PageID.98. As discussed *supra*, the Court questions the adequacy of Defendant's proposed release plan in light of

his history of committing numerous probation violations, while allegedly living with Wilson for the past twelve years and maintaining his asserted strong community ties to the Detroit metropolitan area. The Court also emphasizes once more the inconsistencies in Wilson's affidavit and the ATF Report, which also weigh against finding that Wilson can serve as an effective third-party custodian.

In sum, all four factors under § 3142(g) weigh in favor of detention. While the Court would not have characterized Defendant's criminal history as severely as the Magistrate Judge, the Court ultimately finds that, in light of Defendant's repeated probation violations, the uncertainties surrounding his proposed third-party custodian and employment, and Defendant's reckless behavior surrounding the instant offense, which includes driving a vehicle with a loaded firearm, the Court concludes that no conditions or combination of conditions will reasonably assure the safety of the community if Defendant was released pending trial.

## IV. Conclusion

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion for Revocation of Detention Order [#16] is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 28, 2021

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 28, 2021, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager